**Juanita PATRICH, Widow of Andy Patrich, Deceased, Petitioner,**

v.

**OLD BEN COAL CO. and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**OLD BEN COAL COMPANY, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor and Esther Falletti, (Widow of Joseph Falletti, Deceased), Respondents.**

**Nos. 88–3427, 89–1776.**

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 2, 1990 *.

Decided March 8, 1991.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice

provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). Several of the parties have filed such statements. Upon con-

Harold B. Culley, Jr., Raleigh, Ill.

Samuel L. Perkins, Lexington, Ky., Steven L. Crow, Cleveland, Ohio, for Old Ben Coal Co.

Michael J. Denney, Irene B. Wozny, Steven D. Breeskin, Nicholas J. Levintow, Dept. of Labor, Office of the Sol., Carla Chapman, Ann McLaughlin, Benefits Review Bd., Dept. of Labor, Jeffrey J. Bernstein, Sol. Gen., Office of the Sol., Washington, D.C., for Office of Workers' Compensation Programs.

Harold B. Culley, Jr., Raleigh, Ill., for Esther Falletti, (Widow of Joseph Falletti, Deceased).

Before BAUER, Chief Judge,
CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

This appeal involves two claims for benefits under the Black Lung Benefits Reform Act. The cases have been consolidated for decision because they raise issues regard-

sideration of those statements, the briefs, and the record, the requests for oral argument are denied and the appeal is submitted on the briefs and record.

ing the scope and viability of rebuttal under 20 C.F.R. § 727.203(b) in light of 30 U.S.C. § 902(f)(2).

## I. FACTS

### A. Facts in *Patrich*

Coal miner Andy E. Patrich filed a claim for black lung benefits on April 1, 1976. He had recently stopped work after twenty-five years of coal mine employment. Mr. Patrich died on November 10 of the same year and his widow pursued his claim for benefits. The immediate cause of his death was cancer of the colon. After a hearing on March 9, 1983, an administrative law judge (an ALJ) found that Patrich[1] had successfully invoked the presumption of total disability due to pneumoconiosis under 20 C.F.R. § 727.203(a)(1) by an x-ray reading positive for black lung and by an autopsy showing mild pneumoconiosis. The ALJ found that the presumption was not rebutted. In so finding, the ALJ specifically discounted the report of Dr. Joseph J. Renn, III, who based his opinion on a review of Patrich's medical records. Dr. Renn's report stated, "He did have very minimal simple coal workers' pneumoconiosis but he did not suffer from same." The ALJ found that Dr. Renn could not possibly determine how much of Patrich's disability stemmed from pneumoconiosis and how much from the cancer. Because the presumption was not rebutted, the ALJ granted benefits.

The Benefits Review Board (the BRB) reversed. It held that the ALJ should have considered Dr. Renn's report. The BRB further held that Dr. Renn did have sufficient information to conclude that Patrich's disability was not caused by pneumoconiosis, and remanded to the ALJ for a redetermination whether the employer had successfully rebutted the presumption of total disability caused by coal mine employment. On remand, the ALJ relied on Dr. Renn's report to conclude that the presumption was rebutted under 20 C.F.R.

§ 727.203(b)(3) (i.e., that the disability did not arise out of coal mine employment) because the miner's disability was not caused by pneumoconiosis. The ALJ went on to state that, even under the former regulations of 20 C.F.R. § 410, the presumption had been rebutted. Benefits were therefore denied. The BRB affirmed the denial, noting that eligibility under 20 C.F.R. § 718 had not been established either. The BRB then denied Patrich's motion for reconsideration and Patrich filed a timely petition for review in this Court. She argued that the ALJ's decision was not supported by substantial evidence.

### B. Facts in *Falletti*

Esther Falletti is the widow of Joseph Falletti,[2] who worked as an underground coal miner for Old Ben Coal for twenty-seven years. At the age of fifty, Joseph Falletti underwent two operations for his stomach ulcers and died from complications following the second surgery.

At the hearing, the ALJ heard testimony from Esther Falletti describing Joseph's deteriorating respiratory condition and his increased need to take unauthorized breaks at work. In addition, Joseph's treating physician, Dr. Barkdull, stated that he treated Joseph for ten years for pneumoconiosis, and that Joseph was totally disabled from pneumoconiosis for at least three months before his death. On the other hand, Dr. Thompson, who performed the autopsy, declared that Joseph had minimal pneumoconiosis which would not have been disabling. Moreover, Grogan, a mine superintendent, stated that Joseph never complained and that he noticed no decline in Joseph's work at the mine.

The ALJ found that the autopsy determination of pneumoconiosis established invocation under § 727.203(a)(1), and that Dr. Barkdull's report was sufficient to invoke the presumption under § 727.203(a)(4). Those provisions entitled claimant to a presumption that at the time of his death

---

1. The name "Patrich" will be used in this opinion to refer either to the miner or his widow as the context dictates.

2. The name "Falletti" will be used in this opinion to refer either to the miner or to his widow as the context dictates.

Joseph Falletti was totally disabled due to pneumoconiosis arising out of his coal mine employment. 20 C.F.R. § 727.203(a). The propriety of invocation under § 727.203(a)(1) is not challenged on appeal.[3]

The ALJ further found that the evidence was insufficient to establish rebuttal. Specifically, the ALJ credited Dr. Barkdull's opinion regarding disability over Dr. Thompson's opinion. The ALJ further held that Grogan's testimony was offset to some extent by Esther Falletti's statements, and that it was insufficient to rebut the presumption under § 727.203(b)(1) and (b)(2). With respect to § 727.203(b)(3) and (b)(4), the ALJ declared that nothing in the record challenged the existence of pneumoconiosis or attributed the disability to a cause other than coal mine employment. Old Ben Coal appealed to the BRB, challenging the finding of invocation and also contesting the ALJ's determination that rebuttal had not been met under § 727.203(b)(1), (2) and (3). The BRB affirmed the ALJ's award of benefits, and Old Ben Coal appealed the decision to this court.

## II. ANALYSIS

A miner must establish three elements to make out a successful claim for black lung benefits: (a) total disability, (b) that was caused at least in part by pneumoconiosis and (c) that arose out of coal mine employment. 30 U.S.C. § 901(a); *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 141, 108 S.Ct. 427, 431, 98 L.Ed.2d 450 (1987). All three elements are presumed if the miner has ten years of qualifying coal mine experience and meets one of the criteria in 20 C.F.R. § 727.203(a)(1)–(5). Under § 727.203(a)(1), a claimant can invoke a presumption of entitlement to benefits through x-ray, autopsy or biopsy evidence establishing pneumoconiosis.[4] In both *Patrich* and *Falletti*, invocation was established in that manner.

Rebuttal of that presumption can be accomplished under § 727.203(b) if the evidence establishes that: (1) the miner is in fact doing his usual coal mine work or comparable work; (2) the miner is able to do such work; (3) the total disability or death did not arise in whole or in part from coal mine employment; or (4) the miner does not in fact have pneumoconiosis. 20 C.F.R. § 727.203(b)(1)–(4). The central issue before the court in this consolidated case is the scope and applicability of those rebuttal provisions in light of 30 U.S.C. § 902(f)(2).

Section 902(f)(2) provides that "[c]riteria applied by the Secretary of Labor [under § 727.203] ... shall not be more restrictive than the criteria applicable to a claim filed on June 30, 1973 [under § 410.490]."[5] The Supreme Court in *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), held that under § 902(f)(2) the Labor rules for invoking the presumption may be no more restrictive (more adverse to miners) than the earlier HEW regulations (§ 410.490) with respect both to medical criteria and to other considerations. 488 U.S. at 116–17, 109 S.Ct. at 421–22. The Court refused, however, to decide whether § 902(f)(2) extended that

---

3. Old Ben Coal challenged the finding of § 727.203(a)(4) invocation on appeal to the BRB, but the BRB did not consider that challenge because it found that invocation had been properly established under § 727.203(a)(1). The parties on appeal rely exclusively on the (a)(1) determination, and therefore we will not address (a)(4).

4. Invocation can also be established through: ventilatory studies establishing the presence of a chronic pulmonary disease, § 727.203(a)(2); blood gas studies demonstrating an impairment in the transfer of oxygen, § 727.203(a)(3); other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishing the presence of

a totally disabling respiratory impairment, § 727.203(a)(4); or, in the case of a deceased miner where no medical evidence is available, by affidavit of the survivor or a person with knowledge, § 727.203(a)(5).

5. Regulation 410.490 is the interim presumption applied by the Social Security Administration. For a history of the statutory provisions leading through the permanent regulations under 410.-401 *et seq.*, the 410.490 interim regulations, the 727.203 interim provisions, and the 718 permanent regulations, *see Pittston Coal Group*, 488 U.S. at 108–11, 109 S.Ct. at 417–19; *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987).

limitation to criteria on rebuttal or to criteria unrelated to the disability determination. 488 U.S. at 114, 119, 109 S.Ct. at 420, 422. In *Taylor v. Peabody Coal*, 892 F.2d 503 (7th Cir.1989), we held that § 902(f)(2) *did* apply to criteria on rebuttal, and therefore that the rebuttal provisions in § 727.203 could be no more restrictive (in this context, *less* adverse to employers) than the comparable provisions under § 410.490. 892 F.2d at 506.

### A. Effect of § 902(f)(2) on Use of Medical Evidence to Rebut Disability Under § 727.203(b)(1) & (2)

■ The *Taylor* court concluded that the Labor rebuttal rule found in § 727.203(b)(2) was more restrictive (less adverse to employers) than the HEW rebuttal rules in § 410.490 because it allowed for the consideration of medical evidence. 892 F.2d at 506–07. *Taylor* did not address the availability of medical evidence to support rebuttal under § 727.203(b)(3).[6] On a petition for rehearing, however, we clarified the holding in *Taylor*. We stated that Labor regulations were only invalid to the extent that they allowed rebuttal when HEW rules would not. 892 F.2d at 508. Moreover, we emphasized that *Taylor* did not foreclose the possibility that medical evidence could be used in rebuttal under the HEW rules (§ 410.490), and therefore could be properly considered in rebuttal under the Labor rules (§ 727.203) as well. In other words, *Taylor* holds that the rebuttal rules under § 727.203 may be no more adverse to the miner than the rebuttal rules under § 410.490, and that an employer may use medical evidence on rebuttal under

§ 727.203 only if that evidence would have been allowed on rebuttal under § 410.490. We did not decide the circumstances under which medical evidence is permitted for rebuttal under § 410.490.

In fact, medical evidence is regularly used by employers to rebut disability under § 410.490(c)(2), a regulation which corresponds to the disability provision in § 727.203(b)(2).[7] The language of the regulation itself indicates that medical evidence may be introduced in rebuttal. Subsections 410.490(c)(1) and (c)(2) refer to § 410.412(a)(1) with respect to appropriate rebuttal of disability; the latter provision in turn references § 410.424 and § 410.426. Those provisions state that factors relevant to the disability determination include medical evidence, age, education and work experience. Therefore, because an employer may properly introduce medical evidence on rebuttal of the disability determination under § 410.490, the parallel prerogative under § 727.203(b) does not violate § 902(f)(2).[8] In reviewing cases in which the employer attempts to rebut under § 727.203(b)(1) or (2), we may properly consider both medical and non-medical evidence introduced under those rebuttal provisions provided that the evidence is relevant.

### B. Effect of § 902(f)(2) on Rebuttal of Causation (under § 727.203(b)(3))

*Taylor* did not discuss the other question left open by the Supreme Court in *Pittston Coal*, whether § 902(f)(2) has any application to elements other than total disability (to which rebuttal provisions § 727.203(b)(1) and (b)(2) relate). Thus,

---

6. In *Meyer v. Zeigler Coal Co.*, 894 F.2d 902, 905 n. 3 (7th Cir.1990) we stated that *Taylor* held § 727.203(b)(3) to be invalid. This was a misstatement. *Taylor* concerned only § 727.203(b)(2), and did not declare *that* provision to be completely invalid. *Taylor* held only that § 727.203(b)(2) would be more adverse to the miner than the § 410.490 regulations if medical evidence were considered. In the denial of the petitions for rehearing, we limited that holding. 892 F.2d at 508. We treat the continued vitality of § 727.203(b)(3) in light of *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1989) and 30 U.S.C. § 902(f)(2) as an open question.

7. In fact, the only debatable question under § 410.490(c)(2) is whether the employer must provide vocational evidence as well as medical evidence in order to demonstrate that a miner is able to engage in "comparable and gainful work". *See Ramey v. Kentland Elkhorn Coal Co.*, 755 F.2d 485 (6th Cir.1985); *Taft v. Alabama By–Products Corp.*, 733 F.2d 1518 (11th Cir.1984).

8. The only issue, then, is whether the medical evidence is relevant.

*Pittston Coal* does not resolve whether § 902(f)(2) requires that rebuttal provisions relating to causation (§ 727.203(b)(3)) and the existence of pneumoconiosis (§ 727.-203(b)(4)) be no more restrictive than the § 410.490 regulations. Only the causation element of § 727.203(b)(3) is at issue in this consolidated case. We need not determine the scope of § 902(f)(2) here today because, under these facts, we believe that § 727.203(b)(3) does not establish criteria more restrictive than the criteria of § 410.490.

Section 410.490(b)(1) (the interim HEW invocation regulation) creates a presumption of total disability due to pneumoconiosis if (i) an X-ray, a biopsy or an autopsy shows pneumoconiosis, or (ii) a miner with 15 years experience meets certain specified criteria for ventilatory studies. Once that step is completed, the miner must show that the impairment arose out of coal mine employment (§ 410.490(b)(2)) *except* that, in the case of a miner with 10 years of coal mine experience who showed the existence of pneumoconiosis by means of ventilatory studies,[9] it will be presumed without further proof that the impairment was totally disabling and arose out of coal mine employment (§ 410.490(b)(3)).

Once these criteria are met, the burden shifts to the employer to rebut. There are fewer methods of rebuttal under § 410.490 than under § 727.203(b), and this is the root of the problem. Under § 410.490(c) read literally there are only two ways to undermine a miner's showing: (1) proof

that the miner is in fact doing his coal mine work or similar gainful work, or (2) proof (by way of physical performance tests or other evidence) that the miner could do such work. The BRB has interpreted § 410.490 in just such a manner. *Britten v. Florence Mining Co.*, 13 Black L.Rep. 1–31 (1989).

In the present case, Patrich's eligibility for the § 727.203(a) presumption was based on autopsy findings of pneumoconiosis. This is the equivalent of the first method of invocation under § 410.490 (§ 410.-490(b)(1)(i)). As a result, Patrich would not be eligible for the presumption accorded to miners with ten years' experience under § 410.490(b)(3) even though he has had that much experience.[10] Thus, § 410.490(b)(2) would require Patrich to establish that the impairment was caused by coal mine employment under the rules set forth in §§ 410.416 and 410.456 (the permanent HEW regulations applicable to living and deceased miners, respectively). Those sections allow a miner with ten years coal mine experience a presumption that his impairment arose from coal mine work *in the absence of persuasive evidence to the contrary*. In essence, the treatment of causation under § 410.490 and § 727.203 differs only in form, but not in substance.[11] *Accord Pittston Coal Group*, 488 U.S. at 109, 109 S.Ct. at 417 (rebuttable presumption of causality under §§ 410.416 and 410.456 for miners with 10 years of mining service); *Taylor v. Clinchfield Coal Co.*, 895 F.2d 178, 183 (4th Cir.1990) (comparing

**9.** A chart presented in § 410.490(b)(1)(ii) contains standards for one-second forced expiratory value and for maximum voluntary ventilation. If the miner's scores on these tests are less than or equal to the values contained in the chart, the miner is presumed to be suffering from a chronic respiratory or pulmonary disease.

**10.** The anomaly of according a presumption to ten-year miners under § 410.490(b)(3) only if it was first shown that they were fifteen-year miners under § 410.490(b)(1)(ii) was noted by the Supreme Court in *Pittston Coal Group,* but the Court was unwilling to rewrite the regulations. 488 U.S. at 119–20, 128–29 (Stevens, J., dissenting). We, too, must take the regulations as we find them unless they are inconsistent with their authorizing statute.

**11.** This parity applies only to miners with at least ten years of coal mine employment. For miners with less than ten years of coal employment, §§ 410.490(b) and 410.416 provide that the miner must prove causation. Section 727.-203 has no similar provision because invocation of the presumption, and therefore rebuttal, is available under § 727.203 only for miners with at least ten years of coal employment. The Supreme Court in *Pittston Coal* has indicated that claims under § 727.203 by miners with less than ten years of qualifying employment must be analyzed under the § 410.490 invocation provisions which would include the requirement that the miner prove causation. The § 727.203(b)(3) rebuttal provision is therefore inapplicable to claims involving miners with less than ten years of coal mine employment.

§ 410.416 and § 727.203(b)(3)). Under the former, the employer can prevent the presumption from arising by introducing persuasive evidence negating causation. On the other hand, under § 727.203 the presumption first is invoked and then the employer has the opportunity to present persuasive evidence negating causation and thereby rebutting the presumption. In our opinion it is not more adverse to the miner to create a presumption of causation and thereafter allow the presumption to be rebutted with medical evidence (as in § 727.203(b)(3)) than to create such a presumption only in the absence of evidence that would support rebuttal if rebuttal were contemplated (as in §§ 410.416, 410.-456).

Only fortuitously, however, do we avoid a decision about the more sweeping presumption granted by § 410.490(b)(3) to long-term miners who establish their respiratory disorders by ventilatory tests. A miner who can show the presence of pneumoconiosis by a biopsy or X-ray could, in many cases, also meet the requirements imposed by the ventilatory tests. To allow an employer to present evidence challenging causation by coal mine employment if proof of impairment is made by one method but to disallow it if there is another method of proof borders on the irrational. In fact, at least one court has held that causation evidence may be admitted no matter which method of showing respiratory impairment under § 410.490 is selected. *Bethenergy Mines, Inc. v. Director, OWCP*, 890 F.2d 1295, 1302 (3d Cir.1989). And the Director of the Office of Workers' Compensation Programs has sided with the Third Circuit. *See* Director's Brief in No. 89–1776, *Old Ben Coal Co. v. Falletti.* The Director is the delegate of the Secretary of Labor, and the Department of Labor is the agency primarily responsible for administration of the Black Lung program. Accordingly, the Director's interpretation of the regulations is entitled to great deference from this Court. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); this is in spite of the contrary interpretation reached by the BRB in *Brit-*

*ten, supra*, for we do not defer to the Benefits Review Board's legal interpretations. *Zettler v. Director, OWCP*, 886 F.2d 831, 834 (7th Cir.1989).

Therefore, we are inclined to view favorably the Director's reading of the § 410.490 regulations. And we find his analysis persuasive. Both of the rebuttal provisions of § 410.490(c) refer parenthetically to § 410.412(a)(1). That section (a part of the earlier permanent HEW regulations) defines total disability and requires that a miner shall be considered totally disabled due to pneumoconiosis if he is prevented from engaging in gainful work *by his pneumoconiosis.* The inclusion of this standard in the § 410.490 rebuttal provisions strongly supports the allowance of rebuttal by proof that the miner's disability is not caused by pneumoconiosis.

We agree with the Director and with the Third Circuit that rebuttal similar to that allowed by § 727.203(b)(3) is permitted under § 410.490. As we have noted, as long as all the evidence is weighed before benefits are granted, there is no meaningful difference between a procedure which creates a presumption and then allows evidence to rebut it and one which denies the presumption in the first place if the same evidence is offered. Therefore § 727.203(b)(3) does not establish criteria more adverse to the miner than those under § 410.490 even if the miner's pulmonary disorder is established by ventilatory studies.

In fact, even if we were to accept an interpretation of § 410.490 making it *less* restrictive than § 727.203(b)(3), we would not find § 727.203(b)(3) to be *invalid for that reason*—for a reading of § 410.490 which prohibited the consideration of evidence relevant to causation by coal mine employment would be inconsistent with the Black Lung Benefits Act and the amendments to it. Benefits are to be awarded under the Act only to those whose respiratory impairments arose from employment in the Nation's coal mines. 30 U.S.C. § 901(a). The statute requires the regulatory definition of total disability to "provide that a miner shall be considered totally

disabled when pneumoconiosis prevents him or her from engaging in gainful employment." 30 U.S.C. § 902(f)(1)(A); *Wetherill v. Director, OWCP*, 812 F.2d 376, 380 (7th Cir.1987). Title 30, U.S.C. § 923(b), requires that "in determining the validity of claims under this part, all relevant evidence shall be considered...." The statute calls for a presumption in the miner's favor, allowing a ten-year miner a presumption that the pneumoconiosis arose from coal mine employment, 30 U.S.C. § 921(c)(1), but that presumption is specifically made rebuttable. Thus any regulatory scheme which disallows consideration of evidence relevant to one of the statutory elements of entitlement to benefits is inconsistent with Congress' command.[12]

Congress simply does not provide for the award of benefits when the total disability is demonstrably not caused by pneumoconiosis (and it did not so provide at the time § 410.490 was promulgated); a regulatory structure that allowed benefits when disability is demonstrably not caused by pneumoconiosis but by some other disorder (in Patrich's case cancer) is not consistent with the Black Lung statute. We have elsewhere attempted to reconcile the remedial purposes of the Act with the requirement that causation be shown. *Shelton v. Director, OWCP*, 899 F.2d 690 (7th Cir.1990) (interpreting the permanent Labor regulations of § 718). Even with the simple "contributing cause" standard, it is still absolutely necessary that pneumoconiosis contribute in some way to the miner's disability. Unless the claimant is required to prove causation or the employer is allowed to disprove it, the requirement is improperly written out of the statute.

Therefore, § 902(f)(2) does not alter the availability or scope of rebuttal under § 727.203(b)(1), (2) and (3). Under those provisions, relevant evidence—medical or non-medical—may be introduced to rebut the presumption. We turn now to an analysis of the particular facts of *Patrich* and *Falletti*.

## C. Application to *Patrich*

■ Patrich invoked the rebuttable presumption of total disability due to pneumoconiosis under § 727.203(a)(1) by establishing the existence of the disease through an X-ray and an autopsy. The ALJ found that the presumption was rebutted because the employer established that "the total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). We have held that if the employer can establish that pneumoconiosis was not a contributing cause of the disability, it has established that disability did not arise out of coal mine employment. *Wetherill v. Director, OWCP*, 812 F.2d 376, 380 (7th Cir.1987); *Pancake v. Amax Coal Co.*, 858 F.2d 1250 (7th Cir.1988).

There was substantial medical evidence to support the ALJ's finding that Patrich's total disability was caused entirely by cancer, and not at all by pneumoconiosis. Dr. Renn's report admitted that Patrich "did have very minimal simple coal workers' pneumoconiosis" but went on to find that "he did not suffer from same." The ALJ read this statement in the context of the whole report to mean that Dr. Renn found that, although Patrich had coal dust in the lungs, that coal dust had no effect whatev-

---

**12.** As we have said, we do not need to finally decide the scope of 30 U.S.C. § 902(f)(2) in this case. There is a very strong argument that 30 U.S.C. § 902(f)(2) applies only to criteria dealing with the "total disability" element. The question of § 902(f)'s scope was left open by *Pittston Coal Group* and by *Taylor*. *Pittston Coal Group*, 488 U.S. at 114, 109 S.Ct. at 420; *Taylor*, 892 F.2d at 505, 506 n. 3. Rebuttal under § 727.203(b)(2), like rebuttal under § 727.203(b)(1), is an attack on the presumption of total disability. By contrast, rebuttal under § 727.203(b)(3) is an attack on the presumption that an admitted total disability was caused by

coal mine employment. If 30 U.S.C. § 902(f)(2) applies only to the element of total disability, there is no requirement that § 727.203(b)(3) be no more restrictive than anything contained in § 410. Section 902(f)(2) is part of the statutory definition of "total disability," and the Supreme Court in *Pittston Coal Group* stated that the argument that its strictures apply only to total disability questions "has considerable merit, though it is by no means free from doubt." 488 U.S. at 114, 109 S.Ct. at 420. Thus it is not certain that § 727.203(b)(3) would be invalidated even if it did create criteria more restrictive than the criteria of § 410.490.

er on Patrich's health. Other medical reports said that Patrich "suffered from a Very Mild, Very Focal Degree of Pulmonary Anthracosilicosis of a degree just sufficient to warrant the diagnosis of Coal Worker's Pneumoconiosis," and that Patrich's pneumoconiosis was of "minimal degree." On the record as a whole, there was thus enough medical evidence for the ALJ to conclude that Patrich's pneumoconiosis did not contribute to his disability. 20 C.F.R. § 727.203(b)(3).

The more recent Department of Labor permanent regulations contained in 20 C.F.R. § 718 (promulgated in 1980) are incorporated by reference into § 727.203. We must therefore consider Patrich's eligibility for benefits under those regulations in connection with our inquiry into the propriety of the ALJ's decision under the § 727.203 regulations. The Benefits Review Board considered Patrich's possible entitlement under the § 718 regulations even though the ALJ had made no reference to them. The Board wrote only that "on the facts of this case, the administrative law judge's finding that neither the miner's disability nor death was related to pneumoconiosis ... precludes entitlement under Part 718." If there is a prescribed sufficiency of medical evidence showing a severe case of pneumoconiosis, a coal miner with fifteen years or more of underground coal mine experience is irrebuttably presumed totally disabled by pneumoconiosis caused by coal mining. 20 C.F.R. § 718.304. It is apparent that Patrich's pneumoconiosis was not so advanced that it would qualify for the irrebuttable presumption.

There is a rebuttable presumption in favor of a fifteen-year miner if there is medical evidence of less severe pneumoconiosis and there is evidence of a totally disabling respiratory or pulmonary impairment. This presumption "may be rebutted only by establishing that the miner does not or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with,

employment in a coal mine." 20 C.F.R. § 718.305(a). We recently considered the contributing cause standard in connection with benefits under § 718 in *Shelton v. Director, OWCP*, 899 F.2d 690 (7th Cir. 1990), and we held that pneumoconiosis must be a necessary condition for a miner's total disability, even though it need not be a sufficient condition. This is, in effect, the same standard used in *Wetherill* for claims under § 727. Because Patrich's claim could not meet the § 727 standard, it also fails to meet the § 718 standard.

### D. Application to *Falletti*

Considering both the medical and nonmedical evidence presented by Old Ben Coal to rebut under § 727.203(b)(1) and (b)(3), we turn to a determination whether the ALJ's decision in *Falletti* was supported by substantial evidence. At the hearing, the ALJ heard testimony from Esther Falletti that for the last five years of Joseph's life, he experienced problems such as coughing, wheezing and shortness of breath. Esther Falletti further indicated that Joseph never smoked and that he had to take frequent unauthorized breaks at work to rest. The ALJ also reviewed letters from Dr. Barkdull, Joseph's treating physician, who stated that he treated Joseph for ten years for pneumoconiosis, pulmonary fibrosis and emphysema. Dr. Barkdull listed six factors which indicated that condition and declared that Joseph was totally disabled from pneumoconiosis and pulmonary fibrosis for at least three months prior to his death.[13] In addition, the ALJ examined the report of an autopsy performed on Joseph by Dr. Thompson that revealed the presence of coal workers' pneumoconiosis. In response to Old Ben Coal's inquiry, Dr. Thompson submitted a letter in which he declared that the degree of coal workers' pneumoconiosis suffered by Joseph was not disabling. Finally, Grogan, a mine superintendent who worked with Joseph, testified that he never heard Joseph complain of shortness of breath and

---

**13.** Dr. Barkdull supported his conclusion of total disability by stating that Joseph experienced shortness of breath from walking or from climbing six to eight steps, and that he could not lift over ten pounds.

that he did not notice any decreased ability to work. He also stated, however, that he only observed Joseph for two or three hours in the ten hour workday, and that Joseph was very unlikely to complain about any illness. The ALJ found that the presumption was invoked under § 727.203(a)(1) and (4), and rejected Old Ben Coal's attempt to rebut the presumption under § 727.203(b).

### 1. Rebuttal under § 727.203(b)(1)

The BRB held that § 727.203(b)(1) was inapplicable because Joseph Falletti was not working at the time of his death. We decline to interpret § 727.203(b)(1) so narrowly. Joseph Falletti was not working at the time of his death because he had left for his vacation and for scheduled surgery. He was expected to return to work following the surgery, and therefore the facts do not suggest any significant period of time away from his workplace. This determination does not mean that § 727.203(b)(1) is automatically met. A miner is entitled to benefits even if he was employed at the time of his death if changed circumstances indicated that he was not able to do his usual work. *See Farmer v. Rogers,* 839 F.2d 269 (6th Cir.1988). Moreover, 20 C.F.R. § 727.205(a) explicitly states that "[a] deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled." The necessary inquiry, then, is whether the additional evidence introduced by Old Ben Coal established that Joseph Falletti was in fact doing his usual coal mine work or comparable work.

Old Ben Coal relied on the statements by Dr. Barkdull that coal workers' pneumoconiosis would not have interfered with Joseph's normal activities, and Grogan's statement that there was no decline in Joseph's work at the mine. The ALJ, however, determined that those statements were in conflict with the testimony of Esther Falletti and the medical diagnosis of Dr. Barkdull. Although this is a close case, we find that the record supports the ALJ's determination that § 727.203(b)(1) rebuttal was not met. The ALJ could properly credit the testimony of Esther Falletti over that of Grogan to the extent that there was a conflict. Moreover, Dr. Barkdull's opinion, as Joseph's treating physician, could properly be accorded more weight than a determination of disability based upon an autopsy. Therefore, because Old Ben Coal did not provide evidence sufficient to establish that Joseph was doing his usual coal mine work at the time of his death, rebuttal under § 727.203(b)(1) was not met.

### 2. Rebuttal under § 727.203(b)(3)

In addition to § 727.203(b)(1), Old Ben Coal also attempted to rebut the presumption pursuant to § 727.203(b)(3). Under that provision, rebuttal can be accomplished by showing that pneumoconiosis was not a contributing cause of the total disability. *Wetherill v. Director, OWCP,* 812 F.2d 376, 380 (7th Cir.1987). The evidence adduced at the hearing did not demonstrate that Joseph's total disability was caused entirely by an impairment other than pneumoconiosis. Dr. Thompson declared that the pneumoconiosis was not itself totally disabling, but he did not discuss the combined effect of pneumoconiosis and the other ailments. In fact, Old Ben Coal did not introduce any evidence that would wholly attribute Joseph's total disability to a cause other than pneumoconiosis. Because Old Ben Coal has failed to meet the standard set forth in § 727.203(b)(3), the ALJ properly awarded benefits to Esther Falletti.

Accordingly, the decisions of the BRB in *Patrich* denying benefits and in *Falletti* granting benefits are

AFFIRMED.