**PEABODY COAL COMPANY,**
Petitioner–Cross–
Respondent,

and

**Old Republic Insurance Company,**
Petitioner,

v.

**Anabelle SPESE, Widow of John Spese,**
Respondent–Cross–Petitioner,

and

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondent–Cross–Respondent.**

Nos. 95–1687, 95–1709.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1996.

Decided Aug. 29, 1996.

Mark E. Solomons (argued), Laura M. Klaus, Arter & Hadden, Washington, DC, for Peabody Coal Co., Old Republic Ins. Co.

Ida Castro, Dept. of Labor, Appellate Litigation, Washington, DC, Patricia M. Nece,

Cheryl Blair-Kijewski, Gary K. Stearman (argued), Dept. of Labor, Office of Solicitor, Washington, DC, for Office of Workers' Comp. Programs, U.S. Dept. of Labor.

Raymond T. Reott, Michael S. Freeman (argued), Jenner & Block, Chicago, IL, for Anabelle Spese.

Thomas O. Shepherd, Jr., Benefits Review Bd., Washington, DC, for Benefits Review Bd.

Before CUMMINGS, ESCHBACH, and DIANE P. WOOD, Circuit Judges.

ESCHBACH, Circuit Judge.

On April 1, 1976, John Spese, a miner, filed an application for benefits ("Claim I") under Part C of the Black Lung Benefits Act, 30 U.S.C. §§ 901945. The Department of Labor ("DOL") reviewed evidence under the 1977 Black Lung Benefits Reform Act standards (that is, the 20 C.F.R. Part 727 regulations) and administratively denied the claim on April 30, 1979. DOL found that John Spese had established neither (1) the existence of pneumoconiosis arising out of coal mine employment nor (2) total disability due to pneumoconiosis.

DOL advised Spese that he had sixty days to submit additional evidence or request a formal hearing and that his claim would be considered abandoned if he took no action within sixty days. Spese took no action until two and one-half years later. On December 18, 1981, Spese requested that his claim be reopened and he filed a second application for benefits ("Claim II"). DOL denied Spese's request to reopen his first claim, but DOL considered the second application and provided Spese with a new physical examination. DOL applied the entitlement criteria from 20 C.F.R. Part 718 because the claim had been filed after March 31, 1980. DOL denied the application and Spese requested a formal hearing.

An Administrative Law Judge ("ALJ") held a hearing, during which Peabody Coal Company ("Peabody") stipulated that it was responsible for payment of benefits, if awarded. The ALJ determined that 20 C.F.R. § 725.309(c) required merger of Claim I and Claim II if Spese established a material change of conditions subsequent to the denial of Claim I. The ALJ found a material change in conditions and adjudicated entitlement under the 20 C.F.R. Part 727 criteria. The ALJ awarded benefits on Claim II beginning April 1976, the date of filing Claim I, and Peabody appealed.

The DOL's Benefits Review Board ("the Board") rejected the finding that the two claims merged and remanded the case for the ALJ to consider entitlement under the less liberal 20 C.F.R. Part 718 criteria. On remand, the ALJ applied the Part 718 criteria and awarded benefits beginning on December 1, 1981, the date of filing Claim II. Both Spese and Peabody appealed to the Board. The Board affirmed both the award of benefits and the order that benefits begin on December 1, 1981.

In these two consolidated appeals, Spese's widow, Anabelle Spese,[1] and Peabody each appeal the order of the Board regarding Claim II. Spese argues that 20 C.F.R. § 725.309(c) compels the merger of Claim I and Claim II and review of Claim II under the Part 727 criteria upon proof of a material change in conditions. Spese seeks a determination that the merger of the two claims mandates that benefits begin the month after DOL denied Spese's first claim. Peabody argues that simple pneumoconiosis is incapable of progressing without further dust exposure. Peabody also argues that Spese has failed to demonstrate a "material change" in conditions as a matter of law. The Director agrees that the ALJ's "material change" determination was insufficient under *Sahara Coal Co. v. OWCP*, 946 F.2d 554 (7th Cir. 1991), but argues that there is conflicting evidence on whether such a change occurred. The Director urges us to remand for the ALJ to make the requisite factual determination.

We agree with Spese's position. Claim I and Claim II merged because Spese established a "material change" in conditions. We

---

[1]. Mr. Spese died on April 2, 1988. His wife has continued to pursue the claim because, as a surviving dependent's spouse, she is entitled to benefits based on her husband's claims for benefits. 20 C.F.R. § 725.212. For simplicity, we refer to both Anabelle and John as "Spese."

also agree that benefits should begin as soon after the filing date of Claim I as possible: May 1, 1979. We therefore affirm the Board's award of benefits and remand solely for entry of the date on which benefits should commence.

### I.

■ This appeal raises two important issues: whether Spese's two claims "merged" and, if so, what effect that merger has on review of the claims. To answer this question, we look first to the regulations. The regulations provide that:

> A claimant who filed a claim for benefits ... before March 1, 1978, and *whose previous claims are pending or have been finally denied,* who files an additional claim under this part, shall have the later claim merged with any earlier claim subject to review under Part 727 of the subchapter. If an earlier claim subject to review under Part 727 of this subchapter has been denied after review, a new claim filed under this part shall also be denied, on the grounds of the prior denial, unless the deputy commissioner determines that there has been a material change in conditions or the later claim is a request for modification and the requirements of section 725.310 are met.

20 C.F.R. 725.309(c) (emphasis added). Claim I was filed before March 1, 1978, and was denied because the evidence did not establish that Spese had pneumoconiosis. Spese did not submit new evidence or request a formal hearing. Thus, Claim I was "finally denied." The regulations state that a claimant whose earlier claim has been "finally denied" may file an additional claim, known as a "duplicate claim." A duplicate claim automatically merges with any pending claim or finally denied claim. Therefore, when Spese filed Claim II, an additional claim, that claim automatically merged with Claim I pursuant to the regulations.

The duplicate claim regulation balances a recognition of the finality of the denial of an earlier claim with a recognition that a miner's health may deteriorate after denial of an earlier claim. We agree with the Fourth Circuit's characterization of the regulation:[2] "A new black lung claim is not barred, as a matter of ordinary res judicata, by an earlier denial, because the claims are not the same. The health of a human being is not susceptible to once-in-a-lifetime adjudication." *Lisa Lee Mines v. Director, OWCP,* 86 F.3d 1358, 1362 (4th Cir.1996). The regulation does not prevent a claimant from filing duplicate claims, it "simply interposes a rebuttable presumption that nothing has changed, apparently to lessen the administrative burden of the black lung program. It creates a sort of presumptive finality operating upon a future dispute, a finality that must not be confused with ordinary res judicata, which cannot look forward." Id. at 1362–63 (footnote omitted).

The duplicate claims regulation provides that a duplicate claim shall be denied based on the earlier denial, unless there has been a "material change in conditions."[3] *Sahara Coal,* 946 F.2d at 556. The key here is that the language in the first sentence—"shall have the later claim merged with any earlier claim subject to review under Part 727 of the subchapter"—means that the now merged claims are subject to review under Part 727 of the subchapter rather than being subject to review under Part 718. In essence, the duplicate claim merges into the first claim and takes on its properties.

■ The Director takes an entirely different view of the regulation. The Director's view is that Spese's duplicate claim, Claim II, must be adjudicated under the 20 C.F.R. Part 718 permanent criteria that are applicable to claims filed on or after April 1, 1980. 20 C.F.R. § 71. According to the Director,

> The purpose, structure, and plain language of section 725.309 demonstrate that merger occurs only when Part 727 review of the first claim is pending or when the second claim is filed within one year of the denial

---

2. We do not agree completely, however, with the Fourth Circuit's characterization and treatment of this court's opinion in *Sahara Coal,* 946 F.2d 554. We discuss *Sahara Coal* further *infra.*

3. The exception for a request for modification is not at issue in this case because Claim II was filed more than a year after the denial of the first claim.

of the first. Where, as here, the first claim received Part 727 review and was finally denied after review, the second claim, filed two and one-half years later, must be treated as a separate assertion of entitlement and adjudicated under the entitlement criteria applicable at the time of its filing.

Brief for Director, OWCP, at 11. The Director's interpretation is inconsistent with the language of the regulation itself, which covers both previous claims that are pending and previous claims that "have been finally denied." 20 C.F.R. § 725.309(c).[4]

The Director's interpretation is also bizarre and tortured because it requires the term "subject to review" to have two different meanings within section 725.309(c). The Director suggests that a "claim subject to review" in the first sentence of section 725.309(c) is limited to a claim that is still pending. Yet, the second sentence begins: "If an earlier claim subject to review under part 727 of the subchapter has been denied after review...." 20 C.F.R. § 309(c) (emphases added). If a "claim subject to review" is limited to a claim that is still pending, as the Director suggests, then the claim could not "ha[ve] been denied after review." While the Director's construction of the regulation warrants great deference, it does not control the case if it is plainly erroneous or inconsistent with the regulation. *Peabody Coal Co. v. Director, OWCP,* 972 F.2d 178, 183 (7th Cir.1992). A plain reading of the regulation, and a reading that is consistent with the regulation itself, indicates that the phrase "subject to review under Part 727" defines the phrase "earlier claim." Essentially, the regulation does not apply to all earlier claims, the regulation applies only to earlier claims that were also subject to review under Part 727. Claim II merged with Claim I and shall be denied unless Spese establishes that there has been a material change in conditions.

## II.

 Spese's widow argues that the award of benefits was appropriate because the ALJ determined that there had been a "material change in his condition" and the evidence established Spese's entitlement to the award of benefits. We agree. Determining whether a "material change in conditions" under section 309 has occurred is a question of fact for the ALJ. *Sahara Coal,* 946 F.2d at 557; *Lukman v. Director,* 896 F.2d 1248, 1253 (10th Cir.1990). A claimant establishes a "material change in condition" by proving that the "miner did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by it, or that his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." *Sahara Coal,* 946 F.2d at 556.

Spese asks this court to reject the *Sahara Coal* standard and embrace the more lenient standard advocated by the DOL and adopted by the Third, Fourth, and Sixth Circuits. Under the DOL standard,

> the ALJ must consider all of the new evidence, favorable and unfavorable, and determine whether the miner has proven at least one of the elements of entitlement previously adjudicated against him. If the miner establishes the existence of that element, he has demonstrated, as a matter of law, a material change.

*Sharondale Corp. v. Ross,* 42 F.3d 993, 997–98 (6th Cir.1994) (acknowledging that the *Sahara Coal* standard is a "reasonable interpretation of material change" but deferring to the DOL's interpretation); see also *Lisa Lee Mines v. Director, OWCP,* 86 F.3d 1358, 1363 (4th Cir.1996) (adopting the DOL's standard); *Labelle Processing Co. v. Swarrow,* 72 F.3d 308, 318 (3d Cir.1995) (same). But see *Wyoming Fuel Company v. Director, OWCP,* 90 F.3d 1502 (10th Cir. 1996) (rejecting both the *Sahara Coal* standard and the DOL's standard and adopting a standard that requires the ALJ to consider

---

4. We do not hold that a finally denied claim is "revived merely by filing a subsequent claim." *Tonelli v. Director, OWCP,* 878 F.2d 1083, 1087 (8th Cir.1989). We hold that a finally denied claim may be revived if the claimant establishes a "material change in conditions" as defined in *Sahara Coal.*

"whether, comparing evidence obtained after [claimant's] prior denial to evidence considered in or available at the time of [claimant's] prior claim, [claimant] demonstrated that each of these elements previously found against him have worsened materially since the previous denial.") We have no occasion to address any differences between these two standards because, as we discuss infra, Spese meets the more stringent *Sahara Coal* standard.

The *Sahara Coal* standard focuses on the miner's physical condition and requires that the miner's condition change in a material way. "It is not enough that the new application is supported by new evidence of disease or disability, because such evidence might show merely that the original denial was wrong, and would thereby constitute an impermissible collateral attack on the denial." *Sahara Coal*, 946 F.2d at 556. The *Sahara Coal* standard is true to the regulations because it respects the finality of the initial judgment, but permits review of the claim upon proof of a material change in the miner's conditions rather than upon new evidence of the miner's conditions. A "material" change is a change in conditions such that establishes that the miner was not eligible for benefits at the time of the first claim, but is now eligible for benefits. *Sahara* recognizes that two factual scenarios establish a material change in conditions. In the first scenario, a miner "who did not have black lung disease at the time of the first application ... has since contracted it and become totally disabled by it...." *Id.* In the second scenario, a miner who had black lung disease at the time of the first application establishes a material change in conditions if "his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." *Id.* All parties agree that Claim I was denied because the evidence did not establish that Spese had pneumoconiosis. Spese therefore must establish both that he contracted pneu-

moconiosis and that he became totally disabled by it.

■ On petition for review from a decision of the Benefits Review Board, we review the decision of the ALJ to determine whether the findings of the administrative law judge are rational, supported by substantial evidence, and in accordance with law. *Freeman United Coal Mining Company v. Hunter*, 82 F.3d 764, 767 (7th Cir.1996); *Old Ben Coal v. Director, OWCP*, 62 F.3d 1003, 1006 (7th Cir.1995). A review of the record confirms that substantial evidence supports a finding of a material change in Spese's conditions. The record contains interpretations of three different x-rays, all by B-readers.[5] The x-rays were taken in 1976, 1982, and 1985. The 1976 x-ray was interpreted as negative, thus confirming that Spese did not have pneumoconiosis when the Board denied Claim I. The 1982 x-ray was interpreted as negative, but the 1985 x-ray established the presence of pneumoconiosis[6] and was interpreted as positive. The ALJ found that the 1985 x-ray was three years more recent than the other x-ray evidence of record and was entitled to more weight. The ALJ also noted Peabody failed to offer any evidence challenging the positive 1985 x-ray before the ALJ. The change in Spese's x-rays was undisputed and by itself sufficient to support the ALJ's findings.

■ On appeal, Peabody seeks to attack the accuracy of the 1985 x-ray by arguing that simple pneumoconiosis is not progressive without further dust exposure. Spese retired from work in the coal mines in 1976, when he was laid off due to the closing of the mine. We do not reach this issue. Peabody waived this argument by failing to make it to the ALJ, despite the fact that the ALJ held open the record to give Peabody a chance to challenge the 1985 x-ray. We also note that Peabody's belated argument requires an appropriate factual record to decide the issue. *Freeman United Coal Mining Company v.*

---

5. "B-readers" are experts in interpreting x-rays for evidence of black lung disease. 20 C.F.R. § 718.202(a)(1)(ii)(E); *Hilliard*, 65 F.3d at 668.

6. An ALJ conducts a hearing de novo and is not limited to the record at the time of refiling. 20 C.F.R. § 725.456(b)(1) (providing that the parties

may introduce new documentary evidence before the ALJ at a hearing). It was therefore appropriate for the ALJ to examine a 1985 x-ray when considering Spese's claim even though Claim II was filed December 1, 1981.

*Hilliard,* 65 F.3d 667, 670 (7th Cir.1995). Peabody did not put any such evidence in the record before the ALJ.[7]

On the question of total disability, the ALJ examined the two medical opinions of record. In 1976, Dr. Hickey diagnosed that Spese had chronic bronchitis and that his resulting impairment was "mildly severe." In 1982, Dr. Sachdev diagnosed hypertension, cardiac arrhythmias, congestive heart failure, chronic bronchitis and probable coal workers' pneumoconiosis not evident on chest x-ray. Dr. Sachdev diagnosed limitations due to Spese's pulmonary condition which included the ability to walk 1 block, climb 1 flight of stairs, and inability to lift or carry any weight. Based on this most recent examination and a comparison of the duties necessary to the performance of Spese's usual mine work, the ALJ determined that the medical opinion evidence established the existence of a total respiratory disability. The ALJ invoked the presumption of total disability due to pneumoconiosis pursuant to 20 C.F.R. § 718.204(b) and found no evidence rebutting it.[8] Therefore the award of benefits was appropriate.

### III.

■ The only remaining issue is when the award of benefits begins. The ALJ awarded benefits from the filing of the second claim, December 1, 1981. Spese argues that benefits should be awarded beginning the day after Claim I was denied. Again, we agree with Spese.

The regulations provide that benefits begin the month in which the claimant became totally disabled, or where that date cannot be determined, the month in which the claim was filed. 20 C.F.R. §§ 725.503(b) and 727.301. The exact date of the onset of Spese's pneumoconiosis cannot be determined. Where the exact date of onset cannot be determined, benefits begin the month in which the claim was filed. The filing date would be the date of filing Claim I because Claim II merged with Claim I. But we know that Spese did not establish pneumoconiosis as of April 30, 1979—Claim I was denied because Spese did not have pneumoconiosis at that time. Benefits therefore should begin as soon as possible after the denial of Claim I. *Edmiston v. F & R Coal Co.,* 14 BLR 1–65, 1–69 (B.R.B.1990); *see also Shupink v. LTV Steel Co.,* 17 BLR 1–24, 1–30 (B.R.B.1992) (where later medical evidence establishing disability follows earlier medical evidence showing no disability, benefits begin immediately after the date of the earlier evidence). DOL formally denied Claim I on April 30, 1979. The award of benefits therefore begins on May 1, 1979.

### IV.

The evidence established a material change in Spese's conditions and the ALJ appropriately found that Spese was entitled

---

**7.** The dearth of evidence in support of Peabody's theory may be due to the plethora of evidence rebutting the theory. *See generally Swarrow,* 72 F.3d at 314–316 (noting evidence that medical science, Congress, the DOL, and the courts all have recognized that pneumoconiosis is a progressive and irreversible disease). Ironically, Peabody has moved this court to strike the response briefs of Spese and the DOL because they cite various scientific articles demonstrating that pneumoconiosis is progressive even without further coal dust exposure. We say "ironically" because Peabody forced Respondents to present both argument and evidence on this subject by raising this new issue in Peabody's opening brief and by citing new evidence not raised at the evidentiary hearing before the ALJ. In the light of the fact that Peabody waived the issue by not raising it before the ALJ and belatedly raised the issue in its appellate brief, we deny Peabody's motion.

**8.** Again, the procedural history of this case evidences that it has bounced around between the ALJ, the Board, and this court. Because the case was remanded to the ALJ more than once, the ALJ first found a material change of conditions under Part 727 and, after remand from the Board, later found a material change of conditions under the more demanding standard of Part 718. As our discussion regarding the duplicate claims regulation, 20 C.F.R. § 725.309(c), indicates, Claim II merged with Claim I and should have been reviewed under the less demanding standard of Part 727. In either case, the ALJ's finding was supported by substantial evidence. *See* 20 C.F.R. § 727.203(a)(4) (interim presumption of total disability due to pneumoconiosis may be established by "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment").

to an award of benefits. We therefore AF-FIRM the award of benefits. We REMAND solely on the issue of the date that benefits begin with instructions to enter an award of benefits from May 1, 1979, consistent with the merger of the claims.

AFFIRMED in part; REMANDED in part.