**OLD BEN COAL CO., Petitioner,**

v.

**Brunette SCOTT and Director, Office of Workers' Compensation Programs, Respondents.**

**No. 96–3554.**

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1998.

Decided May 13, 1998.

Mark E. Solomons, Laura M. Klaus (argued), Arter & Hadden, Washington, DC, for Old Ben Coal Company.

Jeffrey S. Goldberg, Christian P. Barber, Department of Labor, Office of the Solicitor, Washington, DC, for Office of Workers' Compensation Programs.

Harold B. Culley, Jr., Culley & Wissore, Raleigh, IL, Sandra M. Fogel (argued), Culley & Wissore, Carbondale, IL, for Brunette Scott.

Thomas O. Shepherd, Jr., Benefits Review Board, Washington, DC, Donald S. Shire, Department of Labor, Washington, DC, for Benefits Review Board.

Before EASTERBROOK, RIPPLE, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

William Scott retired in 1976 from his job as a coal mine manager and applied for black lung benefits. Eight years passed before a hearing was held, and by then William was dead. Although an autopsy would have shown whether he suffered from pneumoconiosis, one was not performed (or, if it was, the results were not placed in the record). Ever since, William's widow Brunette has been debating with Old Ben Coal Co., his former employer, about the significance of x-ray films, which have been read in different ways by different physicians, different administrative law judges, and different members of the Benefits Review Board. The process has dragged out appallingly. There have been denials, reopenings, hearings, decisions, remands, more hearings, more remands, and still more hearings. But the fundamental problem has not been and cannot be solved: the only evidence that would *answer* the question whether William had coal miners' pneumoconiosis is unavailable, and what we do have is inconclusive. The result of another hearing would be no more reliable than the decisions made so far. Under the circumstances, the administrative process must end.

What makes this case unusual is that the administrative process *did* end—in 1988. An ALJ denied the claim after the 1984 hearing. Four years later the Benefits Review Board affirmed. Brunette did not file a petition for judicial review. One would have supposed that the process was over. Some months later, however, Brunette filed a motion to modify the decision, alleging that it had been based on a mistake of fact. Section 22 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 922, incorporated by reference into the Black Lung Benefits Act, 30 U.S.C. § 932(a), gives a claimant one year from the denial of benefits to seek modification "because of a mistake in a determination of fact" by the ALJ. See also *Metropolitan Stevedore Co. v. Rambo*, —— U.S. ——, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997); 20 C.F.R. § 725.310. Brunette sought modification within a year of the BRB's decision; Old Ben does not contend that the year begins with the ALJ's decision, and as this time limit is a statute of limitations rather than a jurisdictional bar, cf. *Intercounty Construction Corp. v. Walter*, 422 U.S. 1, 95 S.Ct. 2016, 44 L.Ed.2d 643 (1975); *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 88

S.Ct. 1140, 20 L.Ed.2d 30 (1968), we do not explore the subject.

Because this claim was filed in 1976, and William worked in the mines for more than 10 years, the only issue that really matters is whether he had the disease. If he did, then a presumption that the disease caused his disability does the rest of the work. 20 C.F.R. § 727.203(a); *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). Section 727.203(a)(1) treats positive x-ray readings as adequate proof of pneumoconiosis, so the claim boils down to the appropriate understanding of the radiographic evidence. The ALJ in 1984, and the BRB in 1988, concluded that the x-rays did not support invocation of the interim presumption. To support her request for modification Brunette submitted positive readings of x-rays that (necessarily) predated the 1984 hearing, but had not been included in the record. She also submitted new interpretations of the x-rays that the ALJ had considered in 1984. But she did not identify any concrete error (for example, that an x-ray read positive for black lung had been classified erroneously as a negative reading) with respect to the 1984 record or its handling. Instead she contended that the "mistake" was the bottom line—that the evidence did not meet the standards of § 727.203(a).

One reply could have been that the statute is limited to errors in the record, rather than to errors in the conclusions drawn from the record. Mistakes with respect to evaluation, inference, and application of legal rules should be handled by motion for reconsideration and appeal to the BRB. Otherwise the requirements for claims based on new evidence or changed circumstances—see 20 C.F.R. § 725.309(c); *Peabody Coal Co. v. Spese*, 117 F.3d 1001 (7th Cir.1997) (en banc)—would be nugatory. Instead of demonstrating a "material change of conditions", the requirement for a new claim (and one that, we held in *Spese*, cannot be satisfied by more evidence about *existing* conditions), the miner or surviving dependent would simply move to "modify" (= reverse) the adverse decision. *O'Keeffe v. Aerojet–General Shipyards, Inc.*, 404 U.S. 254, 255, 92 S.Ct. 405, 30 L.Ed.2d 424(1971), holds that modification under § 922 is not limited to "particular factual errors" and that new evidence may be used to demonstrate a "mistake of fact". That leaves open, however, the question whether (or when) the application of legal standards to a given record may be called a "mistake of *fact*". *Aerojet–General* observed that the time to set aside decisions said to be "not in accordance with law" is limited to 30 days, *id.* at 256, 92 S.Ct. 405, while the time to seek modification under § 922 is a year, which supposes that there is a distinction between factual and legal errors. But Old Ben chose not to explore the location of this line. It contended simply that the request for modification should be denied *because the 1984 decision was right*. There followed another decade's litigation, culminating in an ALJ's decision (affirmed by the BRB) that a new look at the evidence shows that William had pneumoconiosis at his death in 1983—or at least that the x-rays support invocation of the interim presumption of disability caused by pneumoconiosis. Old Ben argues that we should set aside this decision because it is not supported by well-articulated reasons. No argument based on the meaning of "mistake in a determination of fact" has been presented, and as this is civil litigation we let the matter drop. (Perhaps the special rule in 30 U.S.C. § 945(b)(2) for cases pending on March 1, 1978, explains Old Ben's decision.)

■ What Old Ben asks us to hold is that the ALJ violated the APA because he did not use magic words, such as "I find that the criteria for modification have been satisfied." Instead the ALJ reevaluated the evidence and made an award, as if this were the initial decision. Like the Benefits Review Board, we find Old Ben's argument perplexing. It is perfectly clear that the ALJ—the same person who denied the claim in 1984—knew what was afoot. Between 1988 (when the motion for modification was filed) and the new final decision of 1995 there had been multiple hearings and an appeal to the BRB, followed by a remand. *Eifler v. OWCP*, 926 F.2d 663 (7th Cir.1991), on which Old Ben relies, was a case in which the court could not discern why the ALJ acted as he did. Our case presents no such problem. Rehashing the history of the contest and larding the 1995 opinion with formal declarations would have been a pointless exercise, which the APA does not require. What purpose

would it serve for us to remand the case so that the ALJ could put the obvious on paper?

■ By 1995 the administrative record contained 66 readings of 16 x-rays taken between 1975 and 1983. The ALJ gave the most weight to the 1983 films. Old Ben insists that this preference depends on a belief that pneumoconiosis is progressive, which it derides as "mythology". We have held, however, that the etiology of this disease is a question of legislative fact, *Spese*, 117 F.3d at 1009–10, so that the Department of Labor's view may be upset only by medical evidence of the kind that would invalidate a regulation. Old Ben has not adduced evidence on this issue, so we accept the administrative approach. See *Freeman United Coal Mining Co. v. Hilliard*, 65 F.3d 667, 669–70 (7th Cir.1995); *Zeigler Coal Co. v. Kelley*, 112 F.3d 839 (7th Cir.1997). Mine operators must put up or shut up on this issue.

■ Readers were divided about interpretation of the films, and Old Ben insists that the negative readings came from better-qualified interpreters. Maybe; maybe not. Resolving such disputes is not our job. We ask only whether substantial evidence supports the administrative decision, as here it does. Two Board-certified "B-readers" interpreted some of the 1983 films as "2/2"—category 2 fibrosis, an advanced state of the disease. There was of course substantial contrary evidence. Had the record been one-sided, the ALJ would not have ruled against the claimant in 1984, and the ensuing proceedings would not have dragged on as they did. In cases of this kind someone must make a judgment call, and under the statute that someone is the ALJ. The administrative opinions reveal the path to decision, and no more is necessary. The award of benefits is

AFFIRMED.