In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1948

JACQUELINE J. KEENE,

*Petitioner,*

*v.*

CONSOLIDATION COAL COMPANY and
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

Petition for Review of Orders of
the Benefits Review Board.
Nos. 09-BLA-0352 & 09-BLA-0403

ARGUED APRIL 6, 2011—DECIDED MAY 19, 2011

Before FLAUM, EVANS, and TINDER, *Circuit Judges*.

EVANS, *Circuit Judge*.    Several cases have been filed around the country concerning the constitutionality of the recently enacted Patient Protection and Affordable Care Act (PPACA), Pub. L. No. 111-148 (2010). Most of the litigation centers around the "individual mandate"

found in § 1501, which requires individuals to purchase federally-approved health insurance or pay a monetary penalty.[1] This case involves the constitutionality of a less well-known (and arguably less controversial) section of the Act (§ 1556).

Jacqueline Keene, the wife of a deceased coal miner, argues that her claim for black lung benefits should be remanded to the administrative law judge (ALJ) because § 1556 entitles her to a presumption under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901 *et seq.*, that was not available when the ALJ issued his decision denying benefits. The government agrees. Mr. Keene's former employer, Consolidation Coal Company (Consol), however, contends that, by virtue of its retro-active nature, § 1556 violates the due process and takings clauses of the U.S. Constitution.[2]

---

[1] The score is currently three-to-two (that is, district court judgments) in favor of constitutionality. *See Mead v. Holder*, ___ F. Supp. 2d ___, 2011 WL 611139 (D.D.C. Feb. 22, 2011) (finding mandate constitutional); *Florida ex rel. Bondi v. U.S. Department of Health & Human Services*, ___ F. Supp. 2d ___, 2011 WL 285683 (N.D. Fla. Jan. 31, 2011) (finding mandate unconstitutional); *Virginia ex rel. Cuccinelli v. Sebelius*, 728 F. Supp. 2d 768 (E.D. Va. 2010) (same); *Liberty University, Inc. v. Geithner*, ___ F. Supp. 2d ___, 2010 WL 4860299 (W.D. Va. Nov. 30, 2010) (finding mandate constitutional); *Thomas More Law Center v. Obama*, 720 F. Supp. 2d 882 (E.D. Mich. 2010) (same).

[2] Consol is on the hook for any benefits awarded to Mrs. Keene because it is the coal mine operator that most recently

(continued...)

Mrs. Keene's appeal actually encompasses two benefits claims: hers (the "survivor's claim") and her late husband's (the "miner's claim"). Before the ALJ, the dispositive issue on the miner's claim was whether Mr. Keene's total disability was due to pneumoconiosis (that is, black lung disease).[3] In addressing that claim, the ALJ considered the opinions of Drs. Perper, Pineda, Tuteur, Wiot, Oesterling, and Fino. Only the first two doctors offered testimony supportive of the claim. The ALJ discounted the opinion of Dr. Perper because he (1) diagnosed a "new" kind of pneumoconiosis, and (2) found that Mr. Keene did not suffer from congestive heart failure. Both of these findings were contradicted by other medical testimony. The ALJ discounted the opinion of Dr. Pineda, despite recognizing that he was Mr. Keene's treating physician, because Dr. Pineda's testimony was conflicting: he stated both that Mr. Keene's disability was due to pneumoconiosis and that Mr. Keene's level of disability would probably have been the same even if he had not worked in coal mines.

The dispositive issue on the survivor's claim was whether Mr. Keene's death was due to pneumoconiosis.

---

[2] (...continued)
employed her husband for at least one year. *See* 20 C.F.R. §§ 725.494-725.495.

[3] Pneumoconiosis is specifically defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a).

Here, the ALJ considered the autopsy report, the death certificate, and the reports of Drs. Perper, Pineda, Oesterling, and Tuteur. Again, only the first two doctors' testimony supported the claim. Dr. Pineda opined that pneumoconiosis contributed to, but did not hasten, Mr. Keene's death. But the ALJ discounted this testimony because Dr. Pineda did not explain his reasoning. And Dr. Perper's opinion was again afforded little weight because he found that Mr. Keene did not suffer from cardiac disease. This finding even conflicted with that of Dr. Pineda, who concluded that, although pneumoconiosis contributed to Mr. Keene's death, his cardiac condition was a major factor as well. The ALJ therefore determined that Mrs. Keene had not met her burden of proof regarding either claim and denied benefits. The Benefits Review Board affirmed.

After the Board issued its decision, Congress passed the PPACA. Section 1556 of the PPACA amended the BLBA by resurrecting a rebuttable presumption (the "15-year presumption")[4] and making it applicable to claims filed after January 1, 2005, that were still pending on or after March 23, 2010. The 15-year presumption provides:

> if a miner was employed for fifteen years or more in one or more underground coal mines . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, *then*

---

[4] The 15-year presumption was originally added to the BLBA in 1972. *See* Pub. L. No. 92-303, § 4(c) (1972). In 1981, Congress limited its availability to claims filed before January 1, 1982. *See* Pub. L. No. 97-119, § 202(b)(1) (1981).

*there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. . . . The Secre-tary may rebut such presumption only by estab-lishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.*

30 U.S.C. § 921(c)(4) (2010) (emphasis added). In remarks made two days after the passage of the PPACA, the late Senator Robert Byrd[5] stated that § 1556 would "benefit all of the claimants who have recently filed a claim, and are awaiting or appealing a decision or order, or who are in the midst of trying to determine whether to seek a modification of a recent order" and would help "ensure that claimants get a fair shake as they try to gain access to these benefits that have been so hard won." 156 Cong. Rec. S2083-84 (daily ed. Mar. 25, 2010) (statement of Sen. Robert Byrd).

There is no dispute that the miner's claim does not qualify for the 15-year presumption, as it was filed in 2001. The survivor's claim, however, was brought on January 3, 2005.

We begin our analysis with a brief review of the ALJ's decision, which we will not overturn if it was rational,

---

[5] When he died in 2010, Senator Byrd of West Virginia (with 51 years of service) was the longest-serving Senator in the history of the United States Congress.

supported by substantial evidence, and consistent with governing law. *See Old Ben Coal Co. v. Director, OWCP*, 292 F.3d 533, 538 (7th Cir. 2002). To be entitled to benefits under the BLBA, a miner must demonstrate that (1) he had pneumoconiosis, (2) the pneumoconiosis arose out of coal mine employment, (3) he was totally disabled, and (4) the total disability was due to pneumoconiosis. *See* 20 C.F.R. §§ 718.202-718.204. Mrs. Keene argues that the ALJ ignored evidence regarding the last element.

Here, the ALJ considered the doctors' reports and correctly noted that only the opinions of Drs. Perper and Pineda supported the claim. The ALJ then explained why he discounted those opinions: (1) Dr. Perper's findings—that Mr. Keene suffered from a "new" kind of pneumoconiosis and did not have congestive heart failure—were contrary to other medical evidence; and (2) Dr. Pineda's findings—that Mr. Keene's disability resulted from pneumoconiosis and that Mr. Keene's level of disability would probably have been the same even if he had not worked in coal mines—were inconsistent. There is no indication that the ALJ ignored evidence on this issue. Indeed, Mrs. Keene's argument is more appropriately characterized as a request to reweigh the evidence, which we cannot do. *See Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 478 (7th Cir. 2001).

The elements of the survivor's claim differ slightly from those of the miner's claim. To be entitled to benefits, a survivor must demonstrate that (1) the miner had pneumoconiosis, (2) the pneumoconiosis arose out of

coal mine employment, and (3) the miner's death was due to pneumoconiosis. 20 C.F.R. § 718.205(a). Mrs. Keene argues that the ALJ ignored evidence regarding the last element.

Here, the ALJ considered the autopsy report, the death certificate, and the doctors' reports and correctly noted that only the opinions of Drs. Perper and Pineda supported the claim. The ALJ then explained why he discounted those opinions: (1) Dr. Pineda's finding—that pneumoconiosis contributed to, but did not hasten, Mr. Keene's death—was conclusory; and (2) Dr. Perper's finding—that Mr. Keene did not suffer from cardiac disease—was incredible given the rest of the medical evidence presented. Again, Mrs. Keene has not shown any reversible error and is essentially asking us to reweigh the evidence. Her challenge to the ALJ's determinations therefore must fail.

But that is not the end of the line for Mrs. Keene. To repeat, her primary argument on appeal is that the survivor's claim should be remanded to allow the ALJ to determine the applicability of the 15-year presumption, recently revived by § 1556 of the PPACA, which was not available to her the first time around. Because Mrs. Keene's claim was filed within the applicable time period, the government agrees. Consol, however, argues that the claim should not be remanded because, by virtue of its retroactive nature, § 1556 is unconstitutional under the due process and takings clauses. This is a question of law, which we review *de novo*. *See Roberts & Schaefer Co. v. Director, OWCP*, 400 F.3d 992, 996 (7th Cir. 2005).

Consol maintains that retroactive application of § 1556 deprives it of due process. Legislation "adjusting the burdens and benefits of economic life" is presumed to be constitutional; the party alleging a due process violation must establish that the legislature "has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). This is true even where, as here, a question of retroactivity is involved. *Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 806 (7th Cir. 1999). "So long as retroactive application of the change is rationally related to a legitimate legislative purpose, the constraints of due process have been honored." *Kopec v. City of Elmhurst,* 193 F.3d 894, 903 (7th Cir. 1999).

Consol falls far short of meeting its burden. Notably, the Supreme Court has already rejected an argument that the BLBA as a whole violates due process because it imposes retroactive liability on coal mine operators. *See Turner Elkhorn*, 428 U.S. at 19-20. There, the Court concluded that "the imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor—the operators and the coal consumers." *Id.* at 18.

Consol largely ignores this precedent and contends instead that, because Congress did not discuss the retroactive nature of § 1556, the legislation is irrational. But two days after the passage of the PPACA, one of its senator sponsors emphasized that § 1556 would provide people who recently filed a claim with a "fair shake" at

accessing benefits. *See* 156 Cong. Rec. S2083-84. Thus, the rational purpose for applying the 15-year presumption retroactively is to give miners and their survivors whose claims were recently filed a better shot at obtaining benefits.

Furthermore, Congress is not required to discuss an act's purpose to satisfy due process. It is enough that a rational basis exists. *Davon, Inc. v. Shalala*, 75 F.3d 1114, 1124 (7th Cir. 1996). Here, we have no trouble conceiving of such a basis. With § 1556, Congress decided to ease the path to recovery for claimants who could prove at least 15 years of coal mine employment and a totally disabling pulmonary impairment. Its imposition of retroactive liability for a limited period to individuals who recently filed claims is a rational balance between the parties' interests.

Perhaps recognizing that its initial showing was insufficient, Consol sets forth an expansive history of the 15-year presumption in its supplemental reply brief, citing 1980 and 1982 General Accounting Office (GAO) reports for the first time. Those reports generally found that black lung benefits were being awarded without adequate medical evidence of disability and suggested (among other things) amending the BLBA to eliminate presumptions based on years of coal mine employment. Consol argues that, because the GAO's findings led to Congress's decision to limit the 15-year presumption in 1981, it was irrational to resurrect the presumption in 2010 absent evidence of its effectiveness.

Even if this argument had been timely and relevant (as Consol's counsel conceded at oral argument, the GAO

reports did not parse out awards based solely on the 15-year presumption), it would not help Consol. Due process only requires Congress to have acted rationally, not necessarily intelligently. Just because some members of Congress once believed that the 15-year presumption was unwise or unnecessary doesn't mean that they can't change their minds. And it could very well be that, with the presumption, some undeserving claimants are awarded benefits. But the flip-side is also true: without the presumption, some deserving claimants are not awarded benefits. It is up to Congress to decide which is the lesser evil. In sum, Consol has not shown that § 1556 violates due process.

Consol also argues that § 1556 violates the takings clause. "[I]f regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). But, as with a due process challenge, a party characterizing governmental action as an unconstitutional taking "bears a substantial burden." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998). Evaluating constitutionality under the takings clause involves an examination of the "justice and fairness" of the regulation. *Id.* Three factors have "particular significance" to this inquiry: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224-25 (1986).

Again, Consol falls far short of meeting its burden. Regarding the first factor, economic impact, Consol

argues in a conclusory fashion that § 1556 will financially burden coal companies. The only specific financial information that Consol provides is a passing reference to the alleged $1.4 billion debt accumulated by the black lung disability trust fund in 1981 (that is, before Congress limited the 15-year presumption) and statistics from the 1980 and 1982 GAO reports (again, in its supplemental reply brief). But this data proves nothing about the economic impact of the legislation on Consol itself, which is necessary to establish a taking. *See Central States*, 181 F.3d at 808 (rejecting a takings clause challenge where the complainant failed to compare the loss at issue to something in order to assess its impact); *cf. Eastern Enterprises*, 524 U.S. at 529 (sustaining a takings clause challenge where the complainant showed that its cumulative payments under the act at issue would be $50 to $100 million).

Regarding the second factor, interference with investment-backed expectations, Consol again makes only vague arguments, predicting that § 1556 will increase insurance premiums for coal companies, lower profits, and result in job loss. But, as both Mrs. Keene and the government point out, the black lung benefits program has long-since required an endorsement in insurance policies making carriers—and self-insured operators like Consol—liable for obligations from any amendments enacted while the policy is in force. *See* 20 C.F.R. § 726.203(a). And § 1556 only allows the 15-year presumption to reach back to claims filed after 2005 that were still pending in early 2010. *Cf. Eastern Enterprises*, 524 U.S. at 532 (sustaining a takings clause challenge where

the act's beneficiary allocation scheme reached back 30 to 50 years to impose liability based on the complainant's activities between 1946 and 1965).

Finally, Consol argues that the third factor, character of the governmental action, cuts in its favor because Congress did not debate whether the 15-year presumption needed to be resurrected. But Consol cites no case law finding that this action (or rather, inaction) supports a takings violation. The nature of the governmental action here is economic legislation with a limited retroactive element. As the BLBA's retroactive provisions have already withstood a due process challenge, "it would be surprising indeed to discover now that . . . Congress unconstitutionally had taken the assets of the employers there involved." *Connolly*, 475 U.S. at 223; *cf. Eastern Enterprises*, 524 U.S. at 537 (sustaining a takings clause challenge where the act "single[d] out certain employers to bear a burden that is substantial in amount, based on the employers' conduct far in the past, and unrelated to any commitment that the employers made or to any injury they caused").

In the end, Consol makes some strong arguments as to why the 15-year presumption should not have been revived. And it may be, as Consol contends, that Congress "slipped § 1556 into page 142 of the 906-page piece of legislation known as the PPACA." But, unfortunately for the company, those assertions do not amount to grounds for sustaining its constitutional challenges.

With respect to the miner's claim, the petition for review is DENIED, and the Board's decision is AFFIRMED.

With respect to the survivor's claim, the petition for review is GRANTED, and the Board's decision is VACATED. The survivor's claim is REMANDED to the ALJ with instructions that the record be reopened to allow the parties to present evidence regarding the applicability of the 15-year presumption. No costs are assessed against either party.