In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1330

CONSOLIDATION COAL COMPANY,

*Petitioner,*

*v.*

DIRECTOR, OFFICE OF WORKERS' COM-
PENSATION PROGRAMS and JAMES
BURRIS,

*Respondents.*

Petition for Review of an Order of
the Benefits Review Board.
No. 11-BLA-0317

ARGUED NOVEMBER 1, 2012 — DECIDED OCTOBER 8, 2013

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* James Burris worked in various capacities in coal mines for twenty-three years. He twice sought benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq*. ("the Act"), abandoning his first claim in 2001, and then pursuing a second claim in 2006. Following a hearing for

the second claim, an Administrative Law Judge ("ALJ") determined that Burris was totally disabled by pneumoconiosis arising from his coal mining employment and that he qualifies for benefits under the Act. The Benefits Review Board ("Board") affirmed that decision. The employer, Consolidation Coal Company ("Consolidation"), seeks review of that decision, contending that (1) the ALJ erred in finding that Burris established a material change in condition following his first, abandoned claim; (2) the ALJ erred in concluding that Burris proved fifteen years of surface mine employment in conditions substantially similar to those that exist in underground mines; and (3) the ALJ's review of the employer's evidence rebutting a presumption of pneumoconiosis was not supported by substantial evidence. We deny the petition for review.

## I.

The Act provides federal benefits for coal miners who are totally disabled by pneumoconiosis, "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). *See also* 20 C.F.R. § 718.202 ("Determining the existence of pneumoconiosis"). To establish eligibility for benefits, a coal miner must demonstrate that (1) he or she has pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; (3) he or she is totally disabled; and (4) the pneumoconiosis contributes to the total disability. 20 C.F.R. § 725.202(d). Together these are called "the conditions of entitlement." Because a miner's physical condition can change over time, a miner whose initial claim for benefits was denied may bring a subsequent claim if he establishes that his condition has changed. *See* 20 C.F.R. § 718.201(c) (noting that "'pneu-

moconiosis' is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure"). The regulations provide that a subsequent claim "shall be denied unless the claimant demonstrates that one of the applicable conditions of entitlement … has changed since the date upon which the order denying the prior claim became final." 20 C.F.R. § 725.309(d). *See also Consolidation Coal Co. v. Director, Office of Workers' Compensation Programs*, 721 F.3d 789, 793 (7th Cir. 2013); *Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1008 (7th Cir. 1997) (*en banc*). For the purposes of determining whether to allow a subsequent claim, "a denial by reason of abandonment shall be deemed a finding that the claimant has not established any applicable condition of entitlement." 20 C.F.R. § 725.409(c).

A coal miner may have either "clinical" or "legal" pneumoconiosis. *Consolidation Coal*, 721 F.3d at 791; 20 C.F.R. § 718.201(a). Clinical pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). Legal pneumoconiosis is a broader category that "includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). A chronic lung disease can be said to "arise out of coal mine employment" if it is "any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R.

§ 718.201(b). An earlier version of the Act contained a provision creating a rebuttable presumption that coal miners (1) with fifteen years' employment in underground mines (or surface mines with similar conditions), and (2) who suffered from a totally disabling respiratory impairment, were totally disabled due to pneumoconiosis. *Consolidation Coal*, 721 F.3d at 791; Pub. L. No. 92–303, § 4(c) (1972). In 1981, Congress removed this presumption for new claims, but in 2010, Congress revived the presumption for claims filed after January 1, 2005 that were still pending on or after March 23, 2010. *Consolidation Coal*, 721 F.3d at 791-92; *Keene v. Consolidation Coal Co.*, 645 F.3d 844, 847 (7th Cir. 2011); 30 U.S.C. § 921(c)(4). Burris's second claim (the one at issue here) fell within this time period.

## II.

In April 2001, ten years after stopping coal mine work, Burris first applied for Social Security retirement benefits. The clerk who assisted him in applying for Social Security benefits also prepared a black lung benefits application for him, telling him that it was customary to file these claims for retired miners. The claim was filed *pro se* and when the Department of Labor ("Department") requested additional information from Burris, he felt intimidated by the process and let the claim lapse. He did not respond to any requests by the Department's district director ("Director") that he submit medical evidence, authorize medical testing and release medical records. The Director considered the claim abandoned after Burris failed to respond to an order to show cause why the claim should not be denied by reason of abandonment, and the claim was dismissed in November 2001.

In February 2006, Burris filed a second claim, the one at issue here. The Director issued a proposed decision awarding benefits in January 2007. Consolidation then requested a hearing before an ALJ, which was held in October 2009. Because this was a "subsequent" claim, before it could be decided on the merits, Burris was required by the regulations we described above to demonstrate that one of the applicable conditions of entitlement had changed since the date upon which the order denying the prior claim became final. Because Burris's first claim resulted in a denial by reason of abandonment, Burris was deemed not to have "established any applicable condition of entitlement." 20 C.F.R. § 725.409(c). Thus, he could meet this burden by establishing a change in *any* of the applicable conditions of entitlement after November 2001, when his first claim was denied. In its *Employer's Post-Hearing Memorandum* to the ALJ, Consolidation conceded that, having abandoned his prior claim, Burris needed only to demonstrate a change in any of the conditions of entitlement, and that Burris had met the burden by demonstrating that he was totally disabled. *Employer's Post-Hearing Memorandum*, at 27. *See also* 20 C.F.R. § 725.202(d) (noting that one of the conditions of entitlement is that the miner is totally disabled). Unsurprisingly, the ALJ took Consolidation at its word and determined that, in light of the employer's concession, as well as in consideration of the record evidence, Burris "has established a material change in condition from his first claim, denied on November 26, 2001," and his claim could thus proceed. *In re Burris*, *Decision and Order Awarding Benefits* (hereafter "Decision"), January 6, 2011, at 4.

With Burris having met the standard for bringing a subsequent claim, the ALJ proceeded to consider the claim on the merits. At the hearing, Burris established that he worked for Consolidation between 1974 and 1991. His employment with Consolidation was not continuous; he was laid off twice and worked for coal construction companies intermittently. He worked for Bollmeier Construction from 1966 to 1970, and again in 1975 and 1976. H&H Construction employed Burris intermittently between 1972 and 1975. In 1976, he worked for McNally Wellman for four months. Burris performed a variety of duties during his coal mine employment including pan operator, welder, truck driver, machine operator, driller and repairman.[1] The work he performed often did not match his

---

[1]  We take this opportunity to remind lawyers that federal judges are generalists who are not necessarily familiar with the industry-specific jargon that lards the briefs in this case. *See Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. CPC Logistics, Inc.*, 698 F.3d 346, 350 (7th Cir. 2012) ("Many appellate lawyers write briefs and make oral arguments that assume that judges are knowledgeable about every field of law, however specialized. The assumption is incorrect. Federal judges are generalists."). Briefs should include definitions of industry-specific terms on their first use. The briefs here declare without context or explanation that the claimant "worked at the tipple," was a "pan or scraper operator," drove a "gob truck," was a welder "on the dragline," and conducted repairs at the "underground hopper," for example. To provide context, we offer this background on the common use of these terms in the coal industry: A tipple is a structure where coal is cleaned and loaded in railroad cars or trucks. Webster's Unabridged Dictionary of the English Language, RHR Press (2001). The tipple is "a notoriously dusty area where coal is crushed for shipment to customers." *Consolidation Coal Co. v. Director, Office of Workers' Compensation Programs*, 294 F.3d 885, 888 (7th Cir.

(continued...)

job title, however. At Consolidation, Burris worked at surface rather than underground mines. The parties agreed that he should be credited with twenty-three years of coal mine employment but disagreed regarding the degree to which he was exposed to coal dust at the surface mines. The ALJ credited Burris's testimony regarding the dusty conditions at Consolidation and at Bollmeier. At Consolidation, the ALJ found, Burris was exposed to coal and rock dust during extensive work on the hopper, which was located underground. He was also exposed to a significant amount of coal dust while conducting repairs at the tipple, where he frequently worked. The ALJ also credited Burris's testimony that he was exposed to rock and coal dust more than fifty percent of the time during his five years at Bollmeier. Combined with his nearly seventeen years of significant coal dust exposure at Consolidation, the ALJ concluded that Burris established more than fifteen years of underground coal mine employment or its equivalent. Decision, at 12. Burris was also a regular cigarette

---

[1] (...continued)

2002). The government tells us without contradiction from the parties that a pan or scraper machine is "an earth mover used in reclamation." Brief for the Federal Respondent, at 13. "Gob" refers to "refuse from the coal, consisting of coal and impurities, such as sulphur balls." *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 689 (7th Cir. 1987). "A dragline is a large stripping machine that removes surface materials, such as rock and dirt, which cover the coal, in order to access and remove the coal from the mine pit." *Amax Coal Co. v. United Mine Workers of America, Intern. Union*, 92 F.3d 571, 572 (7th Cir. 1996). A hopper is a funnel-shaped chamber or bin in which coal is stored temporarily; it is filled through the top and dispensed through the bottom. Webster's Unabridged Dictionary of the English Language, RHR Press (2001).

smoker. The ALJ resolved the conflicting evidence in the record regarding the number of "pack years" that Burris smoked by crediting Burris's testimony under oath that he smoked a pack a day for forty-five years.[2]

Eventually, Burris developed a number of health problems including heart and lung disease. In determining whether Burris established total disability, the ALJ first noted that Consolidation conceded that Burris was totally disabled. For the sake of completeness, the ALJ then considered record evidence including x-rays, pulmonary function tests, arterial blood gas studies, CT scans and the opinions of five doctors. *See* 20 C.F.R. § 718.204(b)(2) (setting forth the medical criteria for establishing a miner's total disability). The ALJ concluded that the "overwhelming majority" of the pulmonary function tests in the record (ten out of fourteen) established that Burris suffers from a totally disabling respiratory impairment. *See* 20 C.F.R. § 718.202(b)(2)(i). The arterial blood gas studies did not meet the regulatory standards for total disability, and Burris could not prove that he suffered from right-sided congestive heart failure. *See* 20 C.F.R. § 718.204(b)(2)(ii)-(iii). But the ALJ noted that total disability could also be established under the regulations by reasoned medical opinions, and all five physi-

---

[2] The number of pack years is calculated by multiplying the number of packs of cigarettes smoked per day by the number of years the claimant smoked. For example, if a claimant smokes two packs a day for twenty years, that is considered forty pack years. A smoker who consumed one pack a day for forty years would also be credited with forty pack years.

cians[3] who assessed Burris concluded that he was totally disabled by a pulmonary or respiratory ailment and that he is unable to return to work as a miner. *See* 20 C.F.R. § 718.202(b)(2)(iv). Based on all of this evidence (as well as the employer's concession), the ALJ concluded that Burris established that he was totally disabled and was entitled to the benefit of the presumption in 30 U.S.C. § 921(c)(4). That is, the ALJ concluded that Burris was presumed to have a totally disabling respiratory impairment caused by pneumoconiosis, a presumption the employer could attempt to rebut, as we will discuss below.

### III.

Notwithstanding its concession before the ALJ, Consolidation now claims that the ALJ erred in finding that Burris met his burden of demonstrating a change in condition following the denial of his prior claim. In effect, Consolidation argues that, because abandoned claims are treated as if the claimant failed to establish any applicable condition of entitlement, a miner who was totally disabled by pneumoconiosis at the time the first claim was abandoned could unfairly bring a second claim even though no material change in the conditions of entitlement had taken place. In this case, Consolidation contends, Burris's lung function actually improved between the time he abandoned his first claim and the filing of the subsequent claim. Although Consolidation concedes that Burris currently is totally disabled, the company also maintains

---

[3] One of the doctors examined Burris on the Director's behalf, two were hired by the employer, one was Burris's treating physician, and the fifth was retained by Burris to assess the medical records.

that he was *more* totally disabled (if we assume for the purposes of this argument that "total disability" is a term subject to gradation) when he filed his first claim. To allow his claim to proceed, the company urges us to find, would be contrary to law. For that reason, Consolidation requests that we find that the regulations at 20 C.F.R. §§ 725.309(d) and 725.409 are contrary to law with regard to abandoned claims, and that we vacate the ALJ's finding that Burris met his burden of demonstrating a change in one of the conditions of entitlement.

This is a remarkable argument for many reasons but we begin with the most obvious and perhaps the most troubling: Consolidation conceded this point in no uncertain terms before the ALJ. In a section of its *Employer's Post-Hearing Memorandum* titled "Claimant has proven a material change in condition pursuant to § 725.309(d)," Consolidation stated:

> Pursuant to 20 C.F.R. § 725.409, for purposes of § 725.309 a denial of a claim for abandonment shall be deemed a finding that the claimant has not established any applicable condition of entitlement. Therefore a change in any of the conditions of entitlement are sufficient for the § 725.309 finding of a material change in condition.

*Employer's Post-Hearing Memorandum*, at 27. Consolidation also conceded that "all of the physicians agreed that Mr. Burris was totally disabled. Accordingly, Mr. Burris has proven a material change in condition from the denial of his first claim in November 2001." *Id*.

Thus, not only did Consolidation concede the fact that Burris was totally disabled, the company also waived the legal

point regarding the proper reading of the regulations. That is, Consolidation agreed before the ALJ that the regulations allowed a previously abandoned claim to be brought again under the very circumstances presented here. At no time prior to this petition for review did Consolidation argue either (1) that Burris is now somehow less totally disabled than he was when he filed his first claim; or (2) that the amended regulations at 20 C.F.R. §§ 725.309(d) and 725.409 are contrary to law with regard to abandoned claims. Having never raised these arguments before, Consolidation waived them for the purposes of the petition for review. *Spese*, 117 F.3d at 1009 (when failing to raise an issue before the ALJ and failing to develop the record on the point, the employer waives the matter on review). *See also Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (a party may not raise an issue for the first time on appeal). Moreover, stipulations and concessions bind those who make them and Consolidation is therefore bound by its concession below that Burris is totally disabled and has met his burden of demonstrating a change in one of the conditions of entitlement. *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1068 (7th Cir. 2000) (voluntary stipulations bind the parties); *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1173 (7th Cir. 1998) (same). Consolidation has offered no argument for making an exception to these well-established rules. In light of Consolidation's previous factual and legal concessions, as well as its waiver of the issue, the argument is utterly frivolous.

The frivolousness becomes even more apparent if we look past the obvious waiver and consider the claim on the merits. Consolidation is asking us to conclude that two federal regulations are contrary to law. Yet Consolidation failed to

identify the statute to which the regulations are contrary in its briefs. When asked at oral argument to identify what law the regulations are contrary to, Consolidation's counsel replied, "I can't point to a specific statute for you right now." Oral Argument at 5:32-5:55. Nor has Consolidation attempted to identify any such statute following oral argument. Moreover, Consolidation did not cite the relevant case law or standard by which we determine if federal regulations are contrary to law. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (if Congress has directly spoken to the precise question at issue, then a court must follow that clear guidance, but if the statute is silent or ambiguous, the court must defer to authoritative agency interpretations of the law); *Cece v. Holder*, — F.3d —, —; 2013 WL 4083282, *3 (7th Cir. 2013) (*en banc*) (same); *Spese*, 117 F.3d at 1006 (we defer to the agency's reasonable interpretation of a statute unless the agency's interpretation conflicts with the statute). When asked at oral argument whether the regulations Consolidation challenged were permissible interpretations of the statute, counsel replied, "Yes." Oral Argument, at 5:55-6:16. To this day, Consolidation has offered no reason to forgo the usual *Chevron* analysis, and has failed to withdraw its concession at oral argument that the regulations are permissible interpretations of the statute.

Moreover, Consolidation's suggested approach is contrary to that taken by our colleagues in the Sixth Circuit. *See Cumberland River Coal Co. v. Banks*, 690 F.3d 477 (6th Cir. 2012). Consolidation urges us to hold that the ALJ, in determining whether a claimant demonstrates a material change in one of the conditions of entitlement, should compare the evidence of

the miner's medical condition at the time of filing the earlier claim with subsequent medical records to determine if the miner's condition has improved or deteriorated. In *Cumberland*, the Director argued that 20 C.F.R. § 725.309(d) plainly dispenses with the requirement that an ALJ compare the new evidence with the evidence from the previously-denied claim. The Director instead asserted that the regulation "does not authorize, much less compel, an ALJ to compare new evidence with old evidence as part of the change in conditions analysis." *Cumberland*, 690 F.3d at 485. "Rather, the ALJ should compare the new evidence of the miner's physical condition 'with the conclusions reached in the prior claim.'" *Cumberland*, 690 F.3d at 485 (quoting *U.S. Steel Mining Co., LLC v. Director, OWCP*, 386 F.3d 977, 989 (11th Cir.2004)). The Sixth Circuit adopted the agency's reasonable interpretation of the regulation and construed the term "change" to mean disproof of the continuing validity of the original denial, rather than the actual difference between the bodies of evidence presented at different times:

> Under this definition, the ALJ need not compare the old and new evidence to determine a change in condition; rather, he [or she] will consider only the new evidence to determine whether the element of entitlement previously found lacking is now present.

*Cumberland*, 690 F.3d at 486. We see no reason to create a circuit split over the ill-formed argument that Consolidation presses here.

Finally, we note that our recent decision in another case involving Consolidation provides an additional basis for concluding that Burris has met his burden of demonstrating a change in one of the conditions of entitlement. *See Consolidation Coal Co. v. Director, Office of Workers' Compensation Programs*, 721 F.3d 789 (7th Cir. 2013). In that case, we considered the impact of the restoration of the fifteen year presumption on the subsequent claim analysis. *Consolidation Coal*, 721 F.3d at 793. We noted that "a new application for benefits is permissible when a grant of a new application would be consistent with the conclusion that the denial of the earlier application was correct." *Consolidation Coal*, 721 F.3d at 793 (citing *Spese*, 117 F.3d at 1008). We saw "no reason why a subsequent change analysis should treat a change in the applicable law any differently than a material change in the physical condition of the miner. In either situation, it is possible to say that the initial denial was correct but that the miner is *now* entitled to benefits." *Consolidation Coal*, 721 F.3d at 794. We concluded, therefore, that the fifteen year presumption could be used to show a change in condition. As we will discuss below, Burris met the conditions for the fifteen year presumption and thus met the subsequent claim requirements on that basis alone.

## IV.

We find no merit in Consolidation's remaining arguments. The company contends that the ALJ's finding that Burris proved fifteen years of surface mine employment in conditions substantially similar to underground mines was not supported by substantial evidence. Consolidation also maintains that the ALJ erred in concluding that the company failed to rebut the fifteen year presumption. We will not overturn the ALJ's

decision if it is rational, supported by substantial evidence, and consistent with governing law. *Consolidation Coal*, 721 F.3d at 793; *Keene*, 645 F.3d at 848.

**A.**

As we noted above, section 921(c)(4) of the Act creates a rebuttable presumption of total disability due to pneumoconiosis for miners who meet certain conditions. In particular, even if the miner had a chest x-ray that was interpreted as negative for pneumoconiosis, if the miner demonstrates (1) that he was employed for fifteen years or more in one or more underground coal mines; and (2) if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then "there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4). For miners who worked in surface rather than underground mines, the miner may meet the first requirement by demonstrating that the conditions of a miner's employment in a surface mine "were substantially similar to conditions in an underground mine." 30 U.S.C. § 921(c)(4).

In determining Burris's level of exposure to coal dust during his nearly seventeen years at Consolidation, the ALJ credited Burris's testimony that he worked extensively on the hopper and the tipple, and that he was exposed to coal and rock dust "all the time" during that work. Burris also testified that, during his five years at Bollmeier, he was exposed to coal and rock dust at least fifty percent of the time, and the ALJ credited that testimony as well. The ALJ concluded from Burris's testimony that his exposure to coal and rock dust during those twenty-two combined years was substantially

similar to conditions in an underground mine. Consolidation parses the evidence differently. It contends that the ALJ should have multiplied the five years at Bollmeier by fifty percent, for example, and credited Burris with no more than two and a half years of underground conditions for that period of employment. The employer also complains that during more than nine years of his employment at Consolidation, Burris was classified as a pan operator, a job that involved no exposure to dust, and that the ALJ should not have counted that time towards the presumption.

Consolidation's arguments amount to nothing more than a request that we reweigh the evidence. But we do not reweigh the evidence, resolve inconsistencies in the record, make credibility determinations, or substitute our inferences for those drawn below. *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 478 (7th Cir. 2001); *Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1322 (7th Cir. 1995). Moreover, we will not overturn an ALJ's decision if it is rational, supported by substantial evidence, and consistent with governing law. *Consolidation Coal*, 721 F.3d at 793; *Keene*, 645 F.3d at 848. We have reviewed the miner's testimony and find that the ALJ's decision met this standard. Burris testified credibly that, no matter what his job title, he was often called upon to perform repair jobs at the hopper and tipple, two particularly dusty areas. When asked if he worked on the hopper, for example, he replied, "Yes, all the time. The biggest part of the time I was down there. That's where they have the most breakage." Transcript of Hearing, October 6, 2009, at 15. The hopper was, in fact, underground and when working around the hopper, Burris testified that he was exposed to coal dust "practically all the time." *Id*. He

worked at two mines for Consolidation, the No. 2 mine, where he testified he was also exposed to rock and coal dust "all the time," and the No. 5 mine, where he had constant exposure to coal dust whenever he conducted repairs at the tipple, a job he was frequently called to perform. Tr. at 27-28. That is more than enough evidence to support the ALJ's conclusion:

> [A] surface or "strip" miner was not required to directly compare his work environment to conditions underground. Rather, the miner could establish similarity simply by proffering "sufficient evidence of the surface mining conditions in which he worked." It would then be "the function of the ALJ, based on his expertise and, we would expect, certain appropriate objective factors … to compare the surface mining conditions established by the evidence to conditions known to prevail in underground mines."

*Summers*, 272 F.3d at 479 (quoting *Director, Office Workers' Compensation Programs v. Midland Coal Co.*, 855 F.2d 509, 512 (7th Cir. 1988)). The ALJ appropriately analyzed the miner's testimony here, and we see no reason to disturb the conclusion that Burris worked at least fifteen years in conditions substantially similar to those in underground mines.

### B.

We turn to the challenge to the ALJ's conclusion that Consolidation failed to rebut the presumption that Burris was totally disabled due to pneumoconiosis arising from coal mine employment. "The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have

pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4); *Blakley*, 54 F.3d at 1320. Once the claimant qualifies for the presumption of pneumoconiosis by establishing both prongs of the proof (as Burris has here), the burden of rebutting that presumption shifts to the employer, who must show a lack of pneumoconiosis or a lack of relationship between disability and employment. *Mitchell v. Office of Workers' Compensation Programs*, 25 F.3d 500, 505-06 (7th Cir. 1994). *See also Blakley*, 54 F.3d at 1320.

The ALJ correctly noted that there are several means of establishing the existence of pneumoconiosis, including (1) a valid chest x-ray, with due consideration given to the qualifications of persons interpreting the x-ray; (2) a biopsy or autopsy; (3) application of the irrebuttable presumption for complicated pneumoconiosis (which did not apply here); or (4) a determination of the existence of pneumoconiosis as defined in section 718.201 made by a physician exercising sound judgment, based on objective medical evidence and supported by a reasoned medical opinion. 20 C.F.R. § 718.202(a)(1)–(4). The ALJ also noted the correct standard for determining whether the employer rebutted the presumption that the disability arose from coal mine employment. In particular, the ALJ considered whether the employer could demonstrate by a preponderance of the evidence that pneumoconiosis was not a "contributing cause" of the miner's total disability. *Summers*, 272 F.3d at 482 (the proper question is whether, had it not been for his pneumoconiosis, the claimant would have been able to continue working in the mines); *Patrich v. Old Ben Coal Co.*, 926 F.2d 1482, 1490 (7th Cir. 1991) (in considering the "contributing

cause" standard in connection with benefits under section 718, pneumoconiosis must be a necessary condition for a miner's total disability, even though it need not be a sufficient condition). In rebutting the presumption, we have noted that the employer faces an uphill battle. *R&H Steel Buildings, Inc. v. Director, Office of Workers' Compensation Programs*, 146 F.3d 514, 518 (7th Cir. 1998). *See also* 20 C.F.R. § 718.204 ("A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it: (i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.").

In light of these standards, the ALJ carefully considered the entire medical record in assessing whether the employer rebutted the presumption that Burris suffered from either clinical or legal pneumoconiosis as defined in 20 C.F.R. § 718.201, or that his total disability did not arise out of coal mine employment. We need not repeat that evidence here. Consolidation's main complaint is that the ALJ found that the x-ray evidence and CT scan evidence were in equipoise, and that the ALJ improperly broke the tie in resolving the differences among the five medical opinions given. Consolidation also asserts that Burris's disability was due to his extensive cigarette smoking rather than his coal mine employment.

According to Consolidation, a finding that certain evidence is in equipoise is virtually never appropriate because the ALJ

is obliged to resolve scientific disputes. We have certainly held that an ALJ must resolve scientific disputes on scientific grounds. *See Stalcup v. Peabody Coal Co.*, 477 F.3d 482, 484 (7th Cir. 2007). The ALJ must therefore "articulate a reason and provide support for favoring one opinion over another. *Id*. We have also held that "when an ALJ is faced with conflicting evidence from medical experts, he cannot avoid the scientific controversy by basing his decision on which side has more medical opinions in its favor." *Stalcup*, 477 F.3d at 484. But the ALJ here appropriately considered the qualifications of the physicians interpreting the x-rays and CT scans, and gave more weight to those physicians who were board certified radiologists and those who had received special certification as "B-readers."[4] The ALJ nevertheless concluded that the evidence was in equipoise. There is nothing inherently wrong with this finding; evidence is sometimes equally balanced, as was the case here with the x-rays and CT scans, and nothing in the record leads us to believe that the ALJ abandoned his fact-finding obligations.

As unhappy as the company was with the ALJ's finding that some of the evidence was in equipoise, Consolidation was,

---

[4] B-readers are doctors who pass an examination administered by the National Institute for Occupational Safety and Health, a federal agency operating under the auspices of the U.S. Centers for Disease Control and Prevention, in the U.S. Department of Health and Human Services. *See* http://www.cdc.gov/niosh/topics/chestradiography/breader-info.html (last visited September 29, 2013). "B Reader approval is granted to physicians with a valid U.S. state medical license who demonstrate proficiency in the classification of chest radiographs for pneumoconioses using the International Labour Office (ILO) Classification System."

ironically, equally dismayed with the ALJ's resolution of the difference of opinions of the five physicians regarding the diagnosis of pneumoconiosis in favor of the claimant. Consolidation asserts that the ALJ simply counted heads, crediting the three physicians who found that Burris suffered from pneumoconiosis over the two who concluded that he did not. Consolidation also complains that the ALJ gave more weight to the opinion of the treating physician without analyzing the factors listed in 20 C.F.R. § 718.104(d).[5] Again, our review of the ALJ's

---

[5]  In relevant part, that regulation provides: "In weighing the medical evidence of record relevant to whether the miner suffers, or suffered, from pneumoconiosis, whether the pneumoconiosis arose out of coal mine employment, and whether the miner is, or was, totally disabled by pneumoconiosis or died due to pneumoconiosis, the adjudication officer must give consideration to the relationship between the miner and any treating physician whose report is admitted into the record. Specifically, the adjudication officer shall take into consideration the following factors in weighing the opinion of the miner's treating physician:

(1) Nature of relationship. The opinion of a physician who has treated the miner for respiratory or pulmonary conditions is entitled to more weight than a physician who has treated the miner for non-respiratory conditions;

(2) Duration of relationship. The length of the treatment relationship demonstrates whether the physician has observed the miner long enough to obtain a superior understanding of his or her condition;

(3) Frequency of treatment. The frequency of physician-patient visits demonstrates whether the physician has observed the miner often enough to obtain a superior understanding of his or her condition; and

(4) Extent of treatment. The types of testing and examinations conducted during the treatment relationship demonstrate whether the physician has obtained superior and relevant information concerning the miner's

(continued...)

Decision demonstrates that the ALJ did no such thing. Although the ALJ did not neatly march through the section 718.104(d) factors in a single paragraph, the analysis is clear enough from a review of the entire Decision. As the ALJ noted, Burris's treating physician was board certified in both internal and pulmonary medicine. The ALJ also noted that the treating physician had been overseeing Burris's health care for five years, had examined him every four to six months during that period, regularly ordered (and then analyzed) chest x-rays and pulmonary function tests for Burris, and regularly adjusted his medications. The decision to give more weight to the opinion of the treating physician was thus supported by substantial evidence and perfectly consistent with the regulations.

As for the claim that Burris's disability was caused by cigarette smoking rather than coal mine employment, the ALJ properly discredited the medical opinions of the two physicians who supplied reports for the employer on this issue. In one instance, the ALJ rejected the opinion because the doctor relied on general statistics without relating them to Burris in

---

[5] (...continued)
condition.

(5) In the absence of contrary probative evidence, the adjudication officer shall accept the statement of a physician with regard to the factors listed in paragraphs (d)(1) through (4) of this section. In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of a miner's treating physician shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole.

particular. That doctor had also concluded that Burris does not have pneumoconiosis, an opinion the ALJ had already rejected. Having denied that Burris suffered from pneumoconiosis, the doctor was, of course, unable to opine on the cause of a disease that he denied the claimant had. In the other case, the doctor underestimated Burris's exposure to coal dust, contrary to the ALJ's other findings. Thus, the ALJ's determination that neither of these opinions overcame the presumption that Burris's totally disabling respiratory disease was due to his coal mine employment was rational, supported by substantial evidence, and not contrary to the law.

## V.

In sum, Consolidation waived its argument regarding a change in the conditions of entitlement for this subsequent claim, and the argument lacked merit in any case. We also conclude that the ALJ's determination that Burris labored for at least fifteen years in surface mine conditions that were substantially similar to underground mine conditions is rational, supported by substantial evidence and not contrary to law. Finally, we agree with the ALJ's conclusion that the employer failed to rebut the fifteen-year presumption. The petition for review is therefore

DENIED.